## HEIMLICH v. MODEL BRASSIÈRE CO., Inc.

District Court, S. D. New York. September 14, 1928.

Kaplan, Kosman & Streusand, and Morris Streusand, all of New York City, for plaintiff.

Briesen & Schrenk and Hans V. Briesen, all of New York City, for defendant.

HUTCHESON, District Judge. This is a suit in which plaintiff contests the right of the defendant to make and sell an article of women's wear, styled a "scantie," on the ground that it infringes plaintiff's patent upon a device styled a "one-piece brassiere and princess slip," patented in 1913.

Defendant's device is described by one of the witnesses as the result of the revolt of women since the war against tight-fitting and superfluous underclothes, and is declared to be a "three in one"; that is, a one-piece garment combining brassiere, girdle, and "panties," which is to be worn next to the body, and to take the place of all undergarments theretofore previously worn, so that the owner of a "scantie" and a dress or outer garment can, clothed therein, meet the world as one in theory, if not in fact, fully clothed.

The emphasis of the patent is not upon scantiness; quite the contrary. It is upon the combination in such fashion as to permit a tight-fitting dress to be worn over it, of the well-known petticoat and brassiere. "Well-known," of course, is the language of 1913, for, while it is a far cry from the days of Van Twiller, when, as Irving tells us, the virtue of the maiden of Manhattan was protected by her 12 petticoats, to the one petticoat of 1913, when the patent was granted, it is a farther one from 1913 to to-day, when petticoats are not only in most quarters unknown, but it is decreed by orthodox morality that petticoats and virtue have no demonstrable connection.

It is plain, then, that on the face of the matter the plaintiff's and the defendant's garments are quite different but the plaintiff declares that in function they are the same, at least as to the brassiere portion of them both, and his claim is in effect that, because he first combined the brassiere with the petticoat by the use of gores, and in smooth and close-fitting fashion, he has monopolized the use of the brassiere in combinations.

"Since Adam delved and Eve span," clothes have never made the man; quite otherwise the woman, and it is the basic fact of social life that the changing fashions which men have been compelled to supply the means for the enjoyment of since the curse of the fall expelled Adam from the Garden, where fig leaves were not only plentiful, but in style, have made civilizations, and, having made them, changed them.

542

And so, when it is claimed that there has been invented a fashion in women's under-things so all-embracing and so universal in scope as to preclude others from inventing new styles and fashions there, it must be made very clearly to appear that the patented device which is sought to be protected made an innovation of wide purport, and clearly and precisely claimed that wideness.

The patentee did not claim to have discovered a device for women's garments which was revolutionary. He merely presented what, in the then prevailing fashion of corseting and dressing, seemed to be a novel thing, attended with advantages and conveniences as women's clothes were then made and worn, and the emphasis of the patent is expressly laid upon the utility and convenience of the device as applied to the then prevailing styles.

Plaintiff's claim in this suit, that he acquired for the life of his patent the right to prevent others from making any garment which combined a brassiere in smooth alignment, no matter with what garments or in what precise form that combination was effected, is not only not claimed in the patent, but is expressly repudiated.

The defendant insists that brassieres were known long before plaintiff's patent, and that changing styles since the patent, and especially since the "revolt," as they call it, of women, have eliminated altogether, not only the petticoat, but the corset, which plaintiff's device was designed to slip over. Defendant insists that his garment is not a combination of brassiere and petticoat at all, but an entirely different thing, worn differently, different in appearance and in function.

It seems plain to me that the plaintiff's device, for which he got his patent, consisted only of a combination in convenient form in the one garment of a brassiere with a garment, to wit, the petticoat, which in the process of evolution has been rapidly diminishing, and which will, no doubt, before long disappear. That the defendant's device, by which the inventor has sought, by the name "scantie," attached to it, and the appearance of the garment itself, to present the modern ideal of scantiness, is a wholly different thing.

Neither of the defendant's garments seems to me to have any relation to the claim upon which plaintiff got his patent, and therefore, without considering the question at all of whether plaintiff has a valid patent for a combination brassiere and petticoat, I find that defendant's garments do not infringe, and therefore find against the plaintiff here upon the ground of noninfringement.